# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREAS CARLSSON PRODUCTION AB, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JASON BARNES, etc.,<br><br>Defendant. | Case No. CV 15-06049 AFM<br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL (ECF NOS. 269, 271)** |

## I. INTRODUCTION

Plaintiffs Andreas Carlsson Production AB and Andreas Carlsson ("the Carlsson Parties") filed a complaint against Defendant Jason Barnes, a.k.a. Jazan Wild ("Mr. Wild'), seeking declaratory relief and a judicial determination of rights. The present action is related to a prior case (*Andreas Carlsson Production AB v. Barnes*, No. CV 10-08396-CAS (CWx) (C.D. Cal. Nov. 4, 2010)), concerning the ownership and authorship of a series of works known as the "Dandy Works." These works consist of: (1) *Dandyworld* Graphic Novel Treatment; (2) *Welcome to a Dandyworld*; (3) *Step Into the Krazy Life*; (4) *All Hail to the King!,* and (5) *Andreas Carlsson Dandy*, a Swedish language novel. (Exs. 100, 101, 102, 103, 106, 201.) The

prior case was resolved via a settlement agreement, which provided, *inter alia*, that the copyright registrations related to the Dandy Works would be revised to reflect that Mr. Wild was the author of those works. (Ex. 112.) An agreed order in the prior case also provided that Mr. Wild was author of the Dandy Works and works concerning them. (CV 10-08396, ECF No. 106.)

After the settlement, the Carlsson Parties commissioned a script for a musical, entitled *Beyond the Velvet Rope* ("*BTVR*"). (Ex. 104.) *BTVR* included fourteen songs, some of which have lyrics that are the same as English language lyrics in *Andreas Carlsson Dandy*. In the present case, the Carlsson Parties seek a declaration that *BTVR* "is not substantially similar to the Dandy Works and does not infringe on any copyright or other proprietary interest Wild may have in the Dandy Works." (ECF No. 1 at ¶ 18.) Mr. Wild contends that *BTVR* infringes his copyrights in the Dandy Works and that use of "If You Can Dream It, You Can Be It" as the title of a song in *BTVR* constitutes unfair competition – particularly as he owns federally registered trademarks for the same phrase. (Exs. 213, 214.)

In ruling on a summary judgment motion by the Carlsson Parties, the District Judge held that there is a genuine controversy between the parties and that the Court should exercise its discretion to determine whether declaratory relief is warranted. (ECF No. 67 at 9-13.) The District Judge, however, denied summary judgment on the issue of copyright infringement: "[W]hile there are substantial differences between the works, there is sufficient similarity between certain characters and plot elements of the works to create at least a triable issue regarding whether *BTVR* is substantially similar to the Dandy Works. . . . Given the constraints of the summary judgment standard, the Court cannot rule as a matter of law that no reasonable juror could find the works to be substantially similar. (*Id*. at 31.)

On May 9, 2017, the parties consented to conduct all further proceedings before the undersigned Magistrate Judge, and the case was transferred accordingly. (ECF No. 175.)

2

| 1 | On February 22, 2018, a jury was empaneled, and the trial proceeded for four
| 2 | days. After opening statements, the Carlsson Parties filed a motion for judgment of a
| 3 | matter of law (JMOL) under Fed. R. Civ. P. 50(a), which the Court denied without
| 4 | prejudice. (ECF Nos. 247, 256.) The Carlsson Parties filed a second JMOL motion
| 5 | following the close of the evidence and before the case was submitted to the jury.
| 6 | (ECF No. 257.) This motion was taken under submission. Mr. Wild did not file a
| 7 | JMOL motion before the case was submitted to the jury. On February 27, 2018, the
| 8 | jury returned a verdict in favor of the Carlsson Parties. The jury found: (1) Mr. Wild
| 9 | had not shown by a preponderance of the evidence that the script for *BTVR* infringes
| 10 | Mr. Wild's copyrights in the Dandy Works; and (2) Mr. Wild had not shown by a
| 11 | preponderance of the evidence that the Carlsson Parties had engaged in unfair
| 12 | competition by the use of the song title "If You Can Dream It, You Can Be It" in
| 13 | *BTVR*. (ECF No. 265.)

On March 1, 2018, Mr. Wild filed a Motion for Judgment as a Matter of Law (ECF No. 269), and on March 4, 2018, Mr. Wild filed a Motion for a New Trial (ECF No. 271). Pursuant to Local Rule 7-15, the motions were deemed submitted as of April 3, 2018. (ECF No. 272.)

## II.  LEGAL STANDARDS

### A.  Motion Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50

Judgment as a matter of law is warranted where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law under Rule 50(a) must be brought before the case is submitted to the jury. *See* Fed. R. Civ. P. 50(a)(2). If it is denied, it may be renewed, and "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "A renewed motion for judgment as a matter of law is properly granted if the evidence, construed in the light most favorable

to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (internal quotation marks omitted). The following standard applies to a renewed motion brought pursuant to Rule 50:

> A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion. While the court must review the entire evidentiary record, it must view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe. If sufficient evidence is presented to a jury on a particular issue and if the jury instructions on the issue stated the law correctly, the court must sustain the jury's verdict.

*Id.* (citations and internal quotation marks omitted).

**B. Motion for a New Trial Pursuant to Fed. R. Civ. P. 59**

Following a jury trial, a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Such a motion may be granted "if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (citation omitted). "However, a district court may not grant a new trial simply because it would have arrived at a different verdict." *Id.* In assessing the clear weight of the evidence, "the judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371

(9th Cir. 1987). Even if substantial evidence precludes the entry of judgment as a matter of law, a court may grant a motion for a new trial. *Id.*[1]

## III. APPLICATION IN THE PRESENT CASE

### A. Mr. Wild Waived the Right to Move for JMOL

"In order to preserve a challenge to the sufficiency of the evidence to support the verdict in a civil case, a party must make two motions. First, a party must file a pre-verdict motion pursuant to Fed. R. Civ. P. 50(a). Second, a party must file a post-verdict motion for judgment as a matter of law or, alternatively, a motion for a new trial, under Rule 50(b)." *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007) (citations omitted). The "procedural requirement of filing a Rule 50(a) motion before filing a Rule 50(b) motion" is construed "strictly," and the "failure to file a Rule 50(a) motion precludes consideration of a Rule 50(b) motion for judgment as a matter of law." *Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F.3d 1075, 1082-1083 (9th Cir. 2009).

There is no dispute that Mr. Wild did not make a pre-verdict JMOL motion under Rule 50(a). This "failure to file a Rule 50(a) motion precludes consideration of [Mr. Wild's] Rule 50(b) motion for judgment as a matter of law." *Id.* at 1083. Although Mr. Wild argues that he (as a pro se litigant) should be excused from this requirement, the law does not support his argument. First, nothing in the Federal Rules or the case law provides for such an exception. Second, pro se litigants − like all parties – are expected to comply with the applicable Federal and Local Rules. *See, e.g.*, *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) ("*pro se*

---

[1] "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). In the current motions, Mr. Wild has not argued that there were any errors (or omissions) in the jury instructions. To the contrary, during the conference on jury instructions, Mr. Wild stated that he had no objections to the Court's instructions. (ECF No. 285 at 41, 46.) Nor has Mr. Wild challenged any evidentiary rulings from the trial in his motions.

litigants are not excused from following court rules"); Local Rule 1-3 ("Persons appearing pro se are bound by these rules . . ."). Failure of a pro se litigant to timely comply with the governing rules may result in waiver. *See, e.g., Baker v. Walgreens Arizona Drug Co.*, 691 F. Appx. 861 (9th Cir. 2017). Third, in the present case, the Carlsson Parties filed their own Rule 50 motions before the case went to the jury, including one immediately after opening statements. If not already aware, Mr. Wild received actual notice of Rule 50 by these motions, giving him sufficient time to review the rule and prepare his own motion before the case was submitted to the jury. He did not do so and therefore waived his right to bring a post-verdict JMOL motion.[2]

In any event, even if appropriate motions under Rules 50(a) and 50(b) had been made − and the verdict reviewed under the substantial evidence standard − Mr. Wild has not shown that the requested relief is warranted: For the reasons stated below, he has not demonstrated that the clear weight of the evidence favors retrial, which is a lower burden than the substantial evidence standard. *See, e.g.*, *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) ("The trial court may grant a new trial, even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence. . . .") (internal quotation marks omitted).

///
///
///
///

---

[2] At most, it could be argued that Mr. Wild may seek review of the evidence in support of the verdict to determine whether there was plain error. *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). However, this may also have been waived. While certain Ninth Circuit law permits a Rule 50(b) motion for plain error review notwithstanding the failure to make a Rule 50(a) motion, *see Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883, 888 (9th Cir. 2002), the decision in *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006), may have changed this. *See id.* at 405-06 (appellate courts lack jurisdiction to review verdict for sufficiency of the evidence, including presence of plain error, if Rule 50(b) motion is not properly brought).

**B. Legally Sufficient Evidence Supports the Verdict**

**1. Copyright Infringement**

To prevail on copyright infringement, Mr. Wild had the burden[3] to "prove (1) ownership of the copyright; and (2) infringement–that the defendant copied protected elements of the plaintiff's work. Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (citation and internal quotation marks omitted). In proving substantial similarity, Mr. Wild had the burden under both the "extrinsic test" (an objective comparison of specific protectable elements) and the "intrinsic test" (whether the ordinary reasonable audience would find the works substantially similar in the total concept and feel of the works). *See Antonick v. Electronic Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016).

Because there is no dispute that Mr. Wild owns the copyright registrations at issue or that the Carlsson Parties had access to the Dandy Works, the jury was asked to decide whether the script to *BTVR* is substantially similar to protected elements of the Dandy Works. As the jury was instructed, Mr. Wild had the burden to prove that the Carlsson Parties copied original expression from the copyrighted work. *See Swirsky v. Carey,* 376 F.3d 841, 851 (9th Cir. 2004). In this regard, a copyright registration certificate is prima facie evidence (subject to rebuttal by Plaintiffs) of originality for those parts of the Dandy Works for which Mr. Wild obtained a registration. *See* 17 U.S.C. § 410(c); *Marya,* 131 F. Supp. 3d at 984-85. At trial and in his motions, Mr. Wild alleges copyright infringement based primarily on the assertion that *BTVR* includes song lyrics copied from *Andreas Carlsson Dandy*. But

---

[3] Although Mr. Wild is the nominal defendant in this declaratory judgment action, as the intellectual property owner, he has the burden of proving copyright infringement and unfair competition. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 134 S. Ct. 843, 847-51 (2014); *Marya v. Warner/Chappell Music, Inc.* 131 F. Supp. 3d 975, 983 (C.D. Cal. 2015).

7

inclusion of these lyrics in *BTVR* may be considered copyright infringement only if Mr. Wild also shows that the same lyrics in *Andreas Carlsson Dandy* are his original expression. *See Feist Publications v. Rural Telephone Service Co.,* 499 U.S. 340, 361 (1991).

During the trial, the Carlsson Parties presented substantial evidence that the song lyrics were not original expressions of Mr. Wild. This came mainly through the testimony of Andreas Carlsson and Jorgen Elofsson, as well as certain admissions of Mr. Wild. While Mr. Wild challenged Carlsson and Elofsson on cross-examination and through his own testimony, the Court finds that Carlsson and Elofsson were generally credible and consistent in their testimony.

The Carlsson Parties presented persuasive evidence of the following: Of the fourteen songs contained in *BTVR,* seven were written specifically for *BTVR* (ECF No. 290 at 11-12), and three were written before Mr. Wild met Carlsson (ECF No. 290 at 10; ECF No. 288 at 8). Regarding the other lyrics written after Wild and Carlsson began working together, the evidence showed that the songwriters did not collaborate with Wild. (ECF No. 290 at 12-14, 17-18; ECF No. 295 at 80, 81, 86, 87, 96, 97.) Credible evidence was presented showing that Mr. Wild did not make a creative contribution to the lyrics: He was not physically present when the songs were written, and he was not involved during the creative process. (ECF No. 290 at 9, 12-15, 17-19, 27; ECF No. 292 at 34-35; ECF No. 295 at 71-77, 93-96; ECF No. 293 at 24-25, 27.) The songwriters did not intend to share co-authorship with Wild. (ECF No. 290 at 19; ECF No. 283 at 36.) Nor did they intend, at the time of their writing, that the lyrics would be absorbed or combined into an integrated unit. (ECF No. 290 at 19; ECF No. 285 at 19.) *See* 17 U.S.C. § 101 (defining "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole"). The evidence at trial also showed that lyrics were included in *Andreas Carlsson Dandy* with permission of the songwriters and their respective publishers. (ECF No. 290 at 15, 16, 28; Exs.

8

110, 111; ECF No. 295 at 98; ECF No. 288 at 21-22.) Credible evidence from Carlsson further showed that the lyrics for the song "Take Your Clothes Off," reflect the basic theme of boy attracted to girl and are not on based on text or story lines from the Dandy Works. (ECF No. 290 at 18; ECF No 292 at 36-37.) Similarly, the lyrics for "If You Can Dream It You Can Be It" were based on the theme of trying to reach your dreams, were not derived from the stories in the Dandy Works, and were solely conceived of and written by Carlsson. (ECF No. 290 at 13-14; ECF No. 292 at 36-37.) These basic themes are common-place expressions in popular songs, and as *scenes a faire*, they are not protected by copyright. *See Swirsky, supra,* 376 F.3d at 849-50.

During the trial, Mr. Wild presented his evidence that the lyrics in *Andreas Carlsson Dandy* originated (at least in part) from him or his work. According to Mr. Wild, the lyrics are purportedly based on characters, stories and themes found in the Dandy Works, and he is the co-creator and author of the Dandy Works. Therefore, Mr. Wild contended, he is also a co-creator and author of the song lyrics. As discussed above, the Carlsson Parties presented credible evidence to the contrary – including that Mr. Wild had no role in creation of the lyrics and that the lyrics did not arise from stories and themes in the Dandy Works. In light of that evidence, the jury's apparent rejection of Mr. Wild's position is not contrary to the clear weight of the evidence or a miscarriage of justice. Moreover, the mere presence of the lyrics in *Andreas Carlsson Dandy* (or other works related to the Dandy Works) does not establish that they originated with Mr. Wild, even though it was agreed and ordered that Mr. Wild was the author of works in which the lyrics are included. In other words, Mr. Wild did not become an originator of lyrics written by others simply because they are included in a book or other works that he authored. Mr. Wild's copyrights in those works only protect material in the Dandy Works that is original to Mr. Wild.

The evidence also revealed prior conduct by Mr. Wild that was contrary to his trial position concerning the song lyrics. The day after the agreed order was entered in the prior case, Mr. Wild submitted to the U.S. Copyright Office a corrective copyright manuscript of the *Andreas Carlsson Dandy* book. Significantly, the version of the book that Mr. Wild submitted to the Copyright Office did not include the song lyrics, and the amended copyright registration that Mr. Wild obtained did not cover the book with the song lyrics included. (ECF No. 288 at 30-37; Ex. 109.)[4] It would be reasonable to expect Mr. Wild to include the song lyrics in his corrective copyright submission − if those lyrics were in some way original to him and if he believed that he had rights to those lyrics under the settlement agreement and the agreed order. That he did not do so, raised questions about the credibility of his testimony concerning the settlement agreement, the agreed order, and the origin of the lyrics. The Court recognizes that Mr. Wild presented his own explanation as to why he excluded the lyrics from his Copyright Office submission, but it was not unreasonable or against the weight of the evidence for the jury to reject that explanation given the incentive Mr. Wild had to obtain copyright registrations for all material original to him.

Finally, and significantly, the jury was properly instructed that Mr. Wild had to show that there are articulable similarities between original portions of the plot, themes, dialogue, mood, setting, pace characters, and sequence of events of *Beyond the Velvet Rope* as compared to the Dandy Works. *See Shaw v. Lindheim*, 919 F.2d 1353, 1357 (9th Cir. 1990); *Sid & Marty Krofft Television Prods. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977). The Carlsson Parties offered credible evidence through the testimony of Mr. Carlsson (and certain admissions of Mr. Wild) that the treatment, details, scenes, events and characters of *BTVR* are not similar to those in the *Dandy Works*. (ECF No. 288 at 10; ECF No. 283 at 44-57; ECF No. 290

---

[4] Because the corrected copyright registration did not include the lyrics, there is no presumption under 17 U.S.C. § 410(c) that the lyrics were original to Mr. Wild.

at 20-25; ECF No. 295 at 51; ECF No. 293 at 36.) Mr. Wild did not persuasively rebut the Carlsson Parties' proof or establish substantial similarity between the script of *BTVR* and protectable elements of the Dandy Works.

In sum, the Carlsson Parties presented credible and persuasive evidence at trial showing that Mr. Wild had not met his burden to prove copyright infringement. Mr. Wild has not demonstrated that the verdict of no copyright infringement is contrary to the weight of the evidence or a miscarriage of justice that would warrant the granting of a new trial.[5]

## 2. Unfair Competition

To prove unfair competition, Mr. Wild had the burden of proving (1) "If You Can Dream It, You Can Be It" has acquired secondary meaning (i.e., the public identifies it with Mr. Wild and/or the Dandy Works); and (2) there is a likelihood of public confusion (i.e., the public is likely to be misled into believing that *Beyond the Velvet Rope* originated or is associated with or sponsored by Mr. Wild or the Dandy Works because of the common song titles). *See Davis v. United Artists, Inc.*, 547 F. Supp. 722, 727-28 (S.D.N.Y. 1982); *Brandon v. Regents of University of California*, 441 F. Supp. 1086, 1091 (D. Mass. 1977); *Hospital for Sick Children v. Melody Fare Dinner Theatre*, 516 F. Supp. 67, 73 (E.D. Va. 1980); *Orion Pictures Company, Inc. v. Dell Publishing Co., Inc.,* 471 F. Supp. 392, 395 (S.D.N.Y. 1979). The Ninth Circuit has established a multi-factor test for determining likelihood of confusion, under which the jury was instructed to consider (1) strength or weakness of Mr. Wild's mark "If You Can Dream It, You Can Be It"; (2) the Carlsson Parties' use of the mark; (3) similarity of Mr. Wild's and the Carlsson Parties' marks; (4) any

---

[5] The Carlsson Parties point out that Mr. Wild's motions attempt to rely on exhibits that were not admitted into evidence during the trial. (*See* ECF No. 281.) In assessing substantial evidence under a JMOL motion or the weight of the evidence under a new trial motion, only admitted evidence may be considered. However, even if Mr. Wild's additional exhibits are taken into account, those exhibits in combination with the trial record do not show a miscarriage of justice in the jury's verdict and do not change the conclusion that legally sufficient evidence supported the verdict.

evidence of actual confusion; (5) the Carlsson Parties' intent; (6) marketing and advertising channels used by the parties: (7) consumers' degree of care; and (8) possible product line expansion. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

Mr. Wild's argument concerning the unfair competition verdict is brief and seems to be that because the Carlsson Parties' pre-verdict JMOL motion was denied, his post-verdict motions should be granted. (ECF No. 269 at ¶¶ 9-10.) However, denial of the Carlsson Parties' JMOL motion meant only that the matter should go to the jury. It did not mean that a later verdict in favor of the Carlsson Parties would necessarily be subject to reversal or a new trial. Based on the evidence at trial, the jury was justified in finding no unfair competition. Mr. Wild did not show that people in the United States were familiar with the mark "If You Can Dream It, You Can Be It" or that they associated that phrase with him or the Dandy Works. In addition, there was no evidence of actual confusion. (ECF No. 283 at 63-67.) To the extent evidence was presented on the other *Sleekcraft* factors, it was, at the most, ambivalent or neutral regarding a likelihood of confusion. On this record, the jury could reasonably conclude that Mr. Wild failed to meet his burden of proving unfair competition. The verdict on this issue was not against the clear weight of the evidence and was not a miscarriage of justice.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, Defendant Jazan Wild's Motion for Judgment as a Matter of Law (ECF No. 269) and Defendant Jazan Wild's Motion for a New Trial (ECF No. 270) are **DENIED**. Plaintiff's Motion to Strike Exhibits

///
///
///
///

Submitted in Support of Defendant Jazan Wild's Reply in Support of Motion as a Matter of Law (ECF No. 281) is **DENIED AS MOOT**.

    **IT IS SO ORDERED.**

DATED: 5/14/2018

                                                                     */s/ Alexander MacKinnon*
                                                                       ALEXANDER F. MacKINNON
                                                        UNITED STATES MAGISTRATE JUDGE